## WICKOFF *vs.* TRUE and TRUE.

When a firm received goods from A to sell, and afterwards give an order for the delivery of the same goods or of other goods of equal value to B, they cannot, as against a claim set up by B for the goods, sustain, as a set off, a demand in favor of the firm against A, accruing before the date of the order.

MOTION to dissolve injunction issued in this cause, made by defendants, and motion for receiver made by complainant, both of which come on at same time.

*J. C. Brown,* for complainant.

*C. M. Lee,* for defendants.

THE VICE CHANCELLOR. It appears from the pleadings in this cause, that either the complainant or **J. J.** Fenton owned a lot of goods and merchandise on the 1st November, 1839, which, with six months' interest thereon, amounted to the sum of $5,000. The bill charges that the complainant owned them; and the answer denies this fact, but insists that **J. J.** Fenton owned them. On the 21st Nov. 1839, Fenton delivered these goods to the defendants, and took from him a receipt or instrument in the following words:

"Rec'd of **J. J.** Fenton the goods contained in the foregoing bill, which are to be sold by me for the benefit of said Fenton, and the proceeds of the same to be paid him.　　　**H. M. & J. M. TRUE,**

　　　　　　　　per **C. F. TRUE**."

The defendants took possession of the goods under this receipt and engagement.

June, 1840.

Wickoff
v.
True & True

On the 21st Dec. 1839, Fenton executed an order in relation to said goods, in the following words:

"Deliver the goods to John Wickoff, or give him $2,000 cash and your notes for the balance."

Notice of this order or assignment is not admitted, but is denied by the defendants.

On the 17th February, 1840, one of the defendants was in New-York, and saw Fenton; and on that day executed and delivered to him an order in relation to said goods, of which the following is a copy:

"GEORGE A. NEAFUS,—*Dear Sir*, Please deliver to John Wickoff the goods mentioned in the bill from Arthur Tappan & Co. receipted by us and held by said Wickoff; or if not all in the same goods, others equally as good. The bill amounts to $5,000, including interest for six months.

H. M. & J. M. TRUE."

On the 10th March, 1840, one Jacobs, an agent of the complainant, demanded the goods of the defendants. On the 11th March, 1840, the complainant demanded the goods of the defendants in person. The defendants, upon such demand, claimed that Fenton owed them nearly $4,500 on indebtedness accruing prior to Feb. 17, 1840, and that such indebtness was to apply on said goods; and offered, if such debt was allowed, to pay complainant the balance, if he produced a proper order therefor. This the complainant refused; and filed his bill for the delivery of the goods or an account therefor; and obtained an injunction restraining the farther sale of the goods or collection of the debts due to the defendants for the same. The defendants answered, and move to dissolve the injunction on bill and answer;

and the complainant moves for a receiver. Both
motions come on at the same time.

The views and rights of the parties as presented in the pleadings in this cause, lead me irresistibly to the inference that there is fraud, if not perjury, on one side or the other. The complainant in his bill claims the goods and merchandise as originally his own property ; but he does not state distinctly that Fenton violated his trust as agent, in committing them, in his own name, to the defendants for sale. I may therefore safely assume that the defendants, in taking these goods of Fenton, dealt with Fenton as the owner thereof.

The receipt that they gave on 21st November for the same, is some evidence that they received them of Fenton as owner, and not as agent for any other person.

We will look at it in this light, and suppose that Fenton was the actual owner at the time. We will overlook the assignment or order from Fenton to Wickoff, dated Dec. 21, 1839, inasmuch as notice of this assignment or order is denied by the defendants. But on the 17th February, 1840, one of the defendants and the acting partner in the firm, gives to Fenton an order on his clerk to deliver the goods and the whole goods (specifying the amount) to the complainant. This order is given to Fenton, it is true, but it is in favor of the complainant. At this time the defendants insist that Fenton was indebted to them in nearly $4,500 ; but in this order they say nothing about such indebtedness, though they now insist that they have a right to offset such indebtedness against the value of the goods.

It seems to me clear, even if Fenton owned the

June, 1840.

Wickoff
v.
True & True

goods in the first instance, and made the bargain with the defendants for the sale thereof in his own name, that the defendants have precluded themselves by this order from setting up any claim against Fenton, as against the complainant. They have by this order substantially admitted that they have no claim against Fenton which can be set up as an offset on account of these goods. If they had intended to insist upon it, they should have so expressed it in the order. Perhaps on account of the wording of this order, the complainant advanced money or some other thing to Fenton. If so, the defendants must be bound by their admission. They put it in the power of Fenton, by this order, to represent to the complainant, that the defendants were indebted to the full amount of the goods, and that there was no offset thereto. If this representation was fraudulent, the defendants having thus given Fenton the power to make it, the defendants must abide the consequences. And if the complainant has sustained loss by reason of it, the defendants must be the sufferers and not the complainant. He, the complainant, had a right to presume, from this order, that the whole amount was due; and if he became a *bona fide* purchaser of the property in the goods subsequent thereto, he has a right to hold them discharged of any claim against Fenton. The only question is, whether he, the complainant, was a *bona fide* purchaser upon valuable consideration, after such order; what he paid, and how he paid, whether by precedent, debt or otherwise; and these questions cannot be answered except by cross bill against the complainant, inquiring of him the circumstances under which he purchased, and how he paid for the same, and what consideration was given therefor.

Until such cross bill is filed, the court cannot know upon which side the fraud rests. There is fraud on one side or the other. Perhaps the complainant was cognizant of all these transactions, and knew the relations of Fenton with the defendants, if they were such as the defendants set up.

If such is the fact, it may be probed by a cross bill. But as the case now stands, I have no alternative but to deny the motion to dissolve the injunction. Almost a necessary consequence is, that the motion for a receiver must be granted. There are but few of the goods unsold. These should be sold as soon as possible. Their fashions and value may change, and they should be sold soon. The debts for the goods sold, are not of so much consequence. They were mostly sold at one year's credit from January 1, 1840 ; and before the debts become due, this cause will probably be decided. But these debts, as well as the proceeds of the unsold goods, should be under the control of the court ; and the usual order for a receiver is therefore allowed ; but under the circumstances of this case, the costs must abide the farther order of the court.